```
                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION

MANUFACTURER DIRECT, LLC,      )
                               )
          Plaintiff            )
                               )
     v.                        )    Case No. 2:05 cv 451
                               )
DIRECTBUY, INC.,               )
                               )
          Defendant            )
```

OPINION AND ORDER

This matter is before the court on the Motion to Amend Complaint filed by the plaintiff, Manufacturer Direct, LLC, on April 13, 2007 (DE 107); the Motion for Extension of Time to File and Serve Expert Report filed by the plaintiff on April 16, 2007 (DE 108); and the Motion to Compel Plaintiff's Production of Documents filed by the defendant, DirectBuy, Inc., on April 18, 2007 (DE 109). For the reasons set forth below, the Motion to Amend (DE 107) is **DENIED**, the Motion for Extension of Time (DE 108) is **GRANTED IN PART** and **DENIED IN PART,** and the Motion to Compel is **GRANTED.**

Background

DirectBuy markets a franchise system. Franchisees operate buying clubs, offering memberships in the club through which the club's retail customers purchase products, generally those related to home remodeling, at discount prices. In exchange for the right to operate a DirectBuy franchise, the franchisee pays an initial fee and ongoing royalties from the sale of club memberships. The plaintiff in this matter, Manufacturer Direct, oper-

ated a DirectBuy franchise in West Palm Beach, Florida.

The Franchise Agreement between the parties required that Manufacturer Direct limit its service charge to less than 8% of the "actual cost" of purchasing merchandise. The Franchise Agreement also gave DirectBuy the right to terminate the franchise if, among other reasons, the club "violat[ed] any applicable buyers club law or regulation." (Franchise Agreement §14.03(j))

DirectBuy alleged that Manufacturer Direct violated the 8% limit and further violated the Florida Buying Club Law and sent the franchise notice of termination. On December 19, 2005, in response, Manufacturer Direct filed a four-count complaint alleging: (1) breach of contract and the covenant of good faith, stating that DirectBuy was without cause to terminate the agreement; (2) violation of the Indiana Franchise Act; and (3) tortious interference with contract.  The complaint also sought a declaratory judgment regarding the allegations that Manufacturer Direct violated the Florida Buying Club Law.

On January 31, 2006, DirectBuy moved for judgment on the pleadings. The district court granted the motion only with regard to the claims under the Indiana Franchise Act and the claim for tortious interference with contract. (Opinion and Order, July 26, 2006) As a result, the first and fourth claims remain in this case. There is no dispute that the central question to both claims is whether Manufacturer Direct violated the Florida law and, as a result, triggered the termination provisions in the

2

Franchise Agreement.

Following the district court's ruling leaving two of Manufacturer Direct's counts pending, this court established initial case management deadlines. At a September 29, 2006 status conference, January 30, 2007 was established as the expert disclosure deadline, which later was extended until March 2, 2007. In addition, at a February 9, 2007 conference, the court set June 29, 2007 for the close of all discovery and further set deadlines for the filing of dispositive motions by July 31, 2007, prior to trial in February 2008.

With its current motions, Manufacturer Direct seeks leave to amend its complaint, adding a claim for violations of the Sherman Act, and seeks a further extension to the deadline for filing expert disclosures, in part based upon the Sherman Act claim.

## Discussion

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." However, when a proposed amendment exhibits bad faith, dilatory motive, undue delay, or unfair prejudice to the opposing party, leave may be denied. *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992)(*citing* *Foman v. Davis*, 371 U.S. 178, 183, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Sound of Music Company v. Minnesota Mining and Manufacturing Company*, 477 F.3d 910, 922-23 (7th Cir. 2007). Leave to amend a complaint also may be denied if, as amended, the complaint is incapable of surviving a motion to

3

dismiss. *Sound of Music*, 477 F.3d at 922 (*citing* *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002); *Indiana Funeral Directors Insurance Trust v. Trustmark Insurance Corporation*, 347 F.3d 652, 655 (7th Cir. 2003). The court's decision to grant or deny leave to amend will be reversed "only if the district court has abused its discretion by not providing a justifying reason for its decision." *Crest Hill Land Development LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005).

The plaintiff's sole basis in support of leave to amend the complaint is the assertion that it has taken only two depositions, the defendants have taken none, and the trial, set for February 2008, is distant. Manufacturer Direct argues, as a result, that there is no prejudice in permitting the amendment.

It is insufficient for Manufacturer Direct to offer the bare assertion of a lack of prejudice, absent reference to the full context of this matter. Its assertion of an anti-trust claim arises solely from the terms of the franchise agreement, which have been at issue in this matter since it was filed in December 2005. Manufacturer Direct provides no indication of why, after more than two years, a new theory of recovery arises only now, as discovery is set to close, after previous extensions have been granted, the trial has been set, and as the deadline for filing dispositive motions approaches. *See, e.g.,* *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995) ("There must be a point at which a plaintiff makes a commitment to the theory of his case.").

4

Further, it is the plaintiff's burden to pursue its claim. Manufacturer Direct may not rely upon its own failure to conduct further discovery as the rationale supporting a lack of prejudice to the defendant. These circumstances are in marked contrast to the plaintiff in **Bower**, who was granted leave to amend when evidence in support of the new claim materialized only "late in discovery," and the plaintiff "did everything in his power to foreclose any claim of undue delay." **Bower**, 978 F.2d at 1010. Accordingly, the plaintiff's motion to amend its complaint is **DENIED**.

The court further notes that the plaintiff's proposed anti-trust claim appears to be little more than a repackaging of its breach of contract claims. A claim under Section 1 of the Sherman Act requires the plaintiff to show an alleged conspiracy that causes anti-competitive injury to some relevant market. See e.g. **Williams v. I.B. Fischer Nevada**, 999 F.2d 445, 447 (9th Cir. 1993); **Search International Inc. v. Snelling and Snelling, Inc**., 168 F.Supp.2d 621, 624-25 (N.D. Tex. 2001); **Oil Express National, Inc. v. D'Alessandro**, 1998 WL 214727 at *3-4 (N.D. Ill. April 27, 1998). The proposed complaint fails to indicate an anticompetitive effect in a relevant market, claiming only that a relevant market is "other centers." See **42nd Parallel North v. E Street Denim Company**, 286 F.3d 401, 405 (7th Cir. 2002). See also **Mumford v. GNC Franchising, LLC**, 437 F.Supp.2d 344, 358 (W.D. Pa. 2006) ("[A] plaintiff must identify the relevant product and geographic market and allege that the defendant exercises market

5

power within those markets.").

In its complaint, the plaintiff also notes that a franchisee will be required "to compete with other buyer clubs, with general merchandise retailers, other consumer benefits providers, Internet-based merchandisers and various types of discount stores." (Proposed Complaint, ¶ 68) It appears that the plaintiff alleges increased competitive effect, precisely the opposite of what is required. Further, the plaintiff offers no allegations that support the possibility of a conspiratorial agreement between a franchisee and franchisor. *See* **Search International Inc**., 168 F.Supp.2d at 625 ("Snelling and its franchisees constitute a single economic unit incapable of conspiring under Section 1 . . ."); **Williams**, 999 F.2d at 447.

The plaintiff also seeks an extension of time to file its expert reports regarding both the anti-trust claim and its allegations of damages. Because the court denies the motion to amend the complaint to add an anti-trust claim, this aspect of the motion is moot. However, because the deadline to file expert reports passed while this motion was pending, the motion is granted with respect to the plaintiff's damages expert for the pending claims. The plaintiff's expert report shall be filed no later than **August 3, 2007.**

The defendant, in its motion to compel production of documents, describes the parties' inability to coordinate the inspection or delivery of documents responsive to the defendant's Rule

6

34 requests.  Though the plaintiff characterizes the request that lead to the identification of these documents as unduly burdensome, it has not moved under Rule 26 for relief from production and, in fact, appears to admit the relevancy of the documents.

In addition, though there is some indication in the record that the documents occupy "20 legal-sized banker boxes," the plaintiff's response suggests that the documents are kept in a warehouse in "large metal file drawers." The plaintiff further states that there are only two individuals still affiliated with Manufacturer Direct, and neither are physically capable of transferring the documents. Manufacturer Direct then states that it has elected "as its right, to make the documents available in precisely the manner in which they are kept at the warehouse." (Plaintiff's Opposition to Defendant's Motion to Compel, ¶ 12) However, the plaintiff also states that the records are kept "in a warehouse amidst other documents unrelated to the plaintiff." (Plaintiff's Opposition, p. 2 fn 1)

Federal Rule of Civil Procedure 34(b)(i) states that "a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." *American International Specialty Lines Insurance Company v. NWI-I, Inc.*, 240 F.R.D. 401, 410 (N.D. Ill. 2007); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996). Though the rule provides an option to a responding party, "the responding party cannot attempt to hide a needle in a haystack by mingling responsive

7

documents with large numbers of nonresponsive documents." *Hagemeyer North America Inc. v. Gateway Data Services Corporation*, 222 F.R.D. 594, 598 (E.D. Wis. 2004).

The plaintiff's statements create considerable questions regarding the manner in which the responsive documents are stored and, consequently, the manner in which they are being provided to the defendant. However, it is clear that no offer to organize and label these documents has been made. Further, despite the plaintiff's statement that it has offered the documents "in precisely the manner in which they are kept at the warehouse," there is no doubt that if responsive documents are maintained in a warehouse among other documents that have no relationship to the parties in this case, these documents cannot be said to have been offered as kept in the usual course of business. *See e.g. Rowlin v. Alabama Department of Public Safety*, 200 F.R.D. 459, 462 (M.D. Ala. 2001) (*quoting Kozlowski v. Sears, Roebuck & Company*, 73 F.R.D. 73, 76 (D. Mass. 1976)("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purpose of the discovery rules."); *Wagner v. Dryvit Systems, Inc*., 208 F.R.D. 606, 611 (D. Nebraska 2001) (collecting cases) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise

8

discoverable information.").

In the meantime, DirectBuy consistently has maintained that it would bear the expense of shipping these documents from the Florida warehouse to the defendant's counsel in Indiana. Accordingly, it appears that little if any dispute remains in this matter. It is the plaintiff's burden to provide access to relevant documents, organized according to the request or as maintained in the usual course of business. In this instance, the documents, while relevant, are intermingled with irrelevant documents. Regardless of the ultimate manner of production or inspection, it is the plaintiff's burden to segregate and provide these documents. In light of the defendant's acceptance of the responsibility of the costs of shipment, the court concludes that there is no basis to find an undue burden in requiring the plaintiff to comply with Rule 34. The plaintiff is ordered to provide responsive documents in a matter that accommodates their shipment to the defendant.

_____

For the foregoing reasons, the Motion to Amend Complaint filed by the plaintiff, Manufacturer Direct, LLC, on April 13, 2007 (DE 107) is **DENIED**; the Motion for Extension of Time to File and Serve Expert Report filed by the plaintiff on April 16, 2007 (DE 108) is **GRANTED IN PART** and **DENIED IN PART;** and the Motion to Compel Plaintiff's Production of Documents filed by the defendant, DirectBuy, Inc., on April 18, 2007 (DE 109) is **GRANTED**.

ENTERED this 19th day of July, 2007

                                            s/ ANDREW P. RODOVICH
                                              United States Magistrate Judge